1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10   GUADALUPE GONZALEZ, NORMA LOPEZ          Civil No.    09cv2076-AJB(WVG)
     JUAN, individually and on behalf of others
11   similarly situated,

12                              Plaintiffs,   **ORDER GRANTING IN PART AND
                                              DENYING IN PART PLAINTIFFS'
13          v.                                MOTION FOR CLASS
                                              CERTIFICATION**
14   MILLARD MALL SERVICES, INC., THE
     MILLARD GROUP, AND DOES 1                **[Doc. No. 48.]**
15   THROUGH 50,

16                              Defendants.

17          Before the Court is Plaintiffs' motion for class certification of the claims in their second

18   amended complaint.  Plaintiffs allege seven causes of action which include Defendants' failure to

19   pay split shift pay in violation of Wage Order 4-2001[1]; failure to provide meal periods as required by

20   California Labor Code ("Labor Code") §§ 226.7, 512 and Wage Order 4-2001; failure to provide

21   rest periods as required by Labor Code § 226.7 and Wage Order 4-2001; violation of Labor Code §

22   212; failure to pay all waged earned upon termination of employment in violation of Labor Code §

23   202; violation of California Business and Professions Code ("UCL") § 17200; and civil penalties

24   pursuant to the Private Attorneys General Act of 2004 ("PAGA") for issuing improper out-of-state

25   checks in violation of Labor Code section 212.  The motion is submitted on the papers without oral

26   _____

27          [1]The Court notes that in the Second Amended Complaint, the Wage Order  is listed as 7-2001
     and 5-2001. It appears that these are typographical errors as the Wage Order filed in support of the
28   motion for certification is listed as Wage Order No. 4-2001 and cited as such in the points and
     authorities in support of Plaintiffs' motion for class certification.  (Dkt. No. 52-10.)

argument, pursuant to Civil Local Rule 7.1(d)(1).  After a review of the briefs, supporting

documentation, and applicable law, the Court **GRANTS in part and DENIES in part** Plaintiffs'

motion for class certification.

### Procedural Background

This action was originally filed in the Superior Court of California for the County of San

Diego on April 1, 2009.  On September 22, 2009, the case was removed to this Court pursuant to the

Class Action Fairness Act.  (Dkt. No. 1.)  On February 11, 2010, Defendants filed a motion for

judgment on the pleadings.  (Dkt. No. 16.)  On April 7, 2010, the Court issued an order denying

motion for judgment on the pleadings and granted Plaintiffs' request to file a second amended

complaint.  (Dkt. No. 28.)  A second amended complaint ("SAC") was filed on April 12, 2010.

(Dkt. No. 31.)  On October 29, 2010, Plaintiffs filed a motion to certify class action.  (Dkt. No. 48.)

An opposition was filed on January 31, 2011.  (Dkt. No. 68.)  Plaintiffs filed a reply on April 1,

2011.  (Dkt. No. 83.)  On March 14, 2011, the case was transferred to the undersigned judge.  (Dkt.

No. 82.)  On August 1, 2011, both parties filed a joint statement on <u>Wal-Mart Stores, Inc. v. Dukes</u>,

–U.S.–, 131 S. Ct. 2541, 2553-54 (2011).  (Dkt. Nos. 86, 87.)

### Factual Background

Defendant Millard Mall Services, Inc.[2] ("Millard") is a major corporation providing janitorial

services to shopping malls and other commercial facilities.  Millard is based in Lincolnwood, Illinois

and employs more than 4,000 workers in 32 states, including California.

Individually named Plaintiffs are two former janitorial employees of Defendant.  Plaintiff

Guadalupe Gonzalez performed janitorial services from November 2007 to September 2008.

(Joseph Decl. ¶ 3.)  Plaintiff Normal Lopez Juan performed janitorial services from April 2005 to

July 2008.  (<u>Id.</u>)  They were both terminated after failing to report to work for several consecutive

days.  (<u>Id.</u>)  Gonzalez' last day worked was September 10, 2008 and she was terminated on

September 18, 2008.  (Joseph Decl., Ex. 1.)  Juan's last day worked was July 10 or 19th, 2008 and

she was terminated on August 11, 2008.  (<u>Id.</u>)  They allege that Defendants regularly scheduled them

---

[2]Defendants argue that Millard Mall Services Inc., not the Millard Group, Inc. employed the alleged putative class.  On February 4, 2011, Defendants filed a motion for summary judgment on this issue.

1   to work a split-shift and were never paid the premium of one hour's pay at the minimum wage;

2   Defendants regularly failed to provide them with a 30 minute, uninterrupted meal period for work of

3   more than five hours and failed to pay them an additional hour's pay; Defendants regularly failed to

4   provide a 10 minute rest period per four hours of work and failed to pay them an additional hour's

5   pay; Defendants failed to provide a paycheck with an address of a California bank and Defendants

6   failed to issue them final paychecks according to applicable law and the paychecks did not include

7   any unpaid wages for failure to provide meal and/or rest periods and unpaid split shift pay.  (SAC ¶¶

8   4, 5.)

9           From April 1, 2005 through November 16, 2011, Millard Mall employed 2,624 hourly-paid

10   janitorial/housekeeping employees (315 current employees and 2,015 former employees) in

11   California.  (Dkt. No. 68-6, Joseph Decl. filed 1/31/11 ¶ 2.)   The company's employment policies

12   and procedure originate from the corporate offices in Lincolnwood Illinois.  Payroll is handled

13   centrally in Lincolnwood, Illinois and all payroll checks are cut there.  Pay raises and employee

14   termination must be approved by the Human Resources Department in Lincolnwood, Illinois.

15           At each location, Millard employs a Project Manager whose is responsible for scheduling the

16   janitorial employees' work schedules as well as their meal and rest times.  As Plaintiffs state "[a]s a

17   matter of company-wide policy and practice, the employees' work schedules, as well as the meal

18   and rest times are controlled by Millard's Project Managers."  (Dkt. 48-1 at 9.)  Millard requires that

19   all of its hourly employees clock in and out for each work period as well as each meal period taken.

20           Plaintiffs seek an order certifying two Classes and four sub-Classes.

21   1.   Class A to include "[a]ny and all persons who have been employed directly or

22        indirectly by The Millard Group, Inc. and/or Millard Mall Services, Inc. in California

23        at any time from April 1, 2005 to the present." (Dkt. 48 at 2.)

24   2.   Class B to include "[a]ny and all persons who have been employed directly or

25        indirectly by The Millard Group, Inc. and/or Millard Mall Services, Inc. as

26        janitorial/housekeeping employees in California at any time from April 1, 2005 to the

27        present."  (Id.)  Within Class B are four subclasses.

28           A.   Sub-Class 1 includes "[a]ny and all members of Sub-Class B who

worked at least one work schedule, which was interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."  (Id.)

B.  Sub-Class 2 includes "[a]ny and all members of Sub-Class B who worked more than five hours in a day without receiving a meal period of 30 minutes or longer."  (Id.)

C.  Sub-Class 3 includes "[a]ny and all members of Sub-Class B who worked a work period of four hours or more without receiving a 10-minute paid rest period."  (Id. at 3.)

D.  Sub-Class 4 includes "[a]ny and all members of Sub-Class B who are no longer employed by The Millard Group, Inc. and/or Millard Mall Services, Inc."  (Id. at 3.)

**A.   Requests for Judicial Notice**

Defendants request that the Court take judicial notice of three documents: 1) California Division of Labor Standards Enforcement's ("DLSE") February 3, 1995 Opinion Letter; 2) DLSE's October 23, 2008 Memorandum; and 3) DLSE website's answers regarding waiting time penalty. (Dkt. No. 68-1.)  Plaintiffs request that the Court take judicial notice of the DLSE's August 13, 2003 Opinion Letter.  (Dkt. No. 83-2.)

A court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  The content of records and reports of administrative bodies are proper subjects for judicial notice under Rule 201(d).  Interstate Natural Gas Co. v. S. Cal. Gas Co., 209 F.2d 380, 385 (9th Cir. 1953).  Since the parties have not disputed the taking of judicial notice of these documents, and the documents are subject to judicial notice, the Court GRANTS Defendants' and Plaintiffs' requests for judicial notice.

**B.   Evidentiary Objections**

In their opposition, Defendants filed objections to evidence submitted by Plaintiffs in their

1   motion for class certification.  (Dkt. No. 68-2.)  In their reply, Plaintiffs responded to Defendants'

2   evidentiary objections.  (Dkt. No. 83-1.)

3         Since a motion to certify a class is a preliminary procedure, courts do not require strict

4   adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence.  See Eisen v.

5   Carlisle and Jacquelin, 417 U.S. 156, 178 (1974) (The class certification procedure "is not

6   accompanied by the traditional rules and procedures applicable to civil trials.").  At the class

7   certification stage, "the court makes no findings of fact and announces no ultimate conclusions on

8   Plaintiffs' claims."  Alonzo v. Maximus, Inc., 275 F.R.D. 513, 519 (C.D. Cal. 2011) (quoting Mazza

9   v. Am. Honda Motor Co., 254 F.R.D. 610, 616 (C.D. Cal. 2008).  Therefore, the Court may consider

10  inadmissible evidence at the class certification stage.  Keilholtz v. Lennox Hearth Prods, Inc., 268

11  F.R.D. 330, 337 n. 3 (N.D. Cal. 2010).  "The court need not address the ultimate admissibility of the

12  parties' proffered exhibits, documents and testimony at this stage, and may consider them where

13  necessary for resolution of the [Motion for Class Certification]."  Alonzo, 275 F.R.D. at 519.

14        Recently, the United States Supreme Court, in dictum, expressed its "doubt" about a district

15  court's conclusion that "Daubert did not apply to expert testimony at the certification stage of

16  class-action proceedings."  Wal–Mart Stores, Inc. v. Dukes, —— U.S. ——, 131 S. Ct. 2541,

17  2553–54 (2011).  Although the Ninth Circuit has recognized that "Supreme Court dicta have a

18  weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold," dicta

19  from the Supreme Court are still not binding on lower courts.  United States v. Montero–Camargo,

20  208 F.3d 1122, 1132 n. 17 (9th Cir. 2000); Newdow v. Rio Linda Union Sch. Dist., 597 F.3d 1007,

21  1106 (9th Cir. 2010) (Supreme Court dicta . . . are not binding").  The court of appeals is required to

22  "follow binding Supreme Court cases unless and until the Supreme Court overrules them."

23  Newdow, 597 F.3d at 1106.

24        Here, Defendants present evidentiary objections to evidence submitted by Plaintiffs in

25  support of their motion for class certification.  Of importance are 112 questionnaire responses by

26  putative class members.  Defendants object because the responses are not signed under penalty of

27  perjury and 68 of them are in Spanish and not translated.  At this stage of preliminary proceedings,

28  the Court need not require strict adherence to the Federal Rules of Evidence. See Eisen, 417 U.S. at

1    178.  Accordingly, the Court overrules Defendants' evidentiary objections.

2    **C.      Legal Standard for Class Certification**

3         Federal Rule of Civil Procedure 23 ("Rule 23") governs the certification of a class.  See Fed.

4    R. Civ. P. 23.  A plaintiff seeking class certification must affirmatively show the class meets the

5    requirements of Rule 23.  Dukes, 131 S. Ct. at 2551.  To obtain certification, a plaintiff bears the

6    burden of proving that the class meets all four requirements of Rule 23(a)—numerosity,

7    commonality, typicality, and adequacy.  Ellis v. Costco Wholesale Corp., 657 F.3d 970 979-80 (9th

8    Cir. 2011).  If these prerequisites are met, the court must then decide whether the class action is

9    maintainable under Rule 23(b).  This case involves Rule 23(b)(3), which authorizes certification

10   when "questions of law or fact common to class members predominate over any questions affecting

11   only individual class members," and "a class action is superior to other available methods for fairly

12   and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court exercises

13   discretion in granting or denying a motion for class certification.  Staton v. Boeing Co., 327 F.3d

14   938, 953 (9th Cir. 2003).

15        The Court is required to perform a "rigorous analysis," which may require it "to probe

16   behind the pleadings before coming to rest on the certification question."  Dukes, 131 S. Ct. at 2551.

17   "'[T]he merits of the class members' substantive claims are often highly relevant when determining

18   whether to certify a class.  More importantly, it is not correct to say a district court may consider the

19   merits to the extent that they overlap with class certification issues; rather, a district court must

20   consider the merits if they overlap with Rule 23(a) requirements."  Ellis, 657 F.3d.at 981.

21   Nonetheless, the district court does not conduct a mini-trial to determine if the class "could actually

22   prevail on the merits of their claims."  Id. at 983 n.8; United Steel, Paper & Forestry, Rubber, Mfg.

23   Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co., 593 F.3d 802,

24   808 (9th Cir. 2010) (citation omitted) (court may inquire into substance of case to apply the Rule 23

25   factors, however, "[t]he court may not go so far . . . as to judge the validity of these claims.").

26        The issues disputed by the parties are whether Plaintiffs have shown commons question of

27   law or fact sufficient to meet their burden under Rule 23(a)(2) and whether Plaintiffs have shown

28   that these common questions predominate over individual questions under Rule 23(b)(3).

1      **D.      Federal Rule of Civil Procedure 23(a)(2)**

2              Plaintiffs argue that there are common legal questions [3] as to whether Millard's

3      compensation system is consistent with Millard's obligations as an employer to pay split-shift pay,

4      pay "premium" pay for unprovided meal and/or rest periods, and pay wages upon termination in a

5      timely manner.  Defendants contend that Plaintiffs have not established commonality to support

6      class certification under the holding in Dukes.

7              Under the Rules, Plaintiffs must show that "there are questions of fact and law that are

8      common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality requires the plaintiff to demonstrate

9      that the class members 'have suffered the same injury,'" Dukes, 131 S. Ct. at 2551 (quotation

10     omitted).  "That common contention . . . must be of such a nature that it is capable of classwide

11     resolution – which means that determination of its truth or falsity will resolve an issue that is central

12     to the validity of each one of the claims in one stroke." Id.  "'What matters to class certification . . .

13     is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to

14     generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the

15     proposed class are what have the potential to impede the generation of common answers.'" Id.

16     (emphasis in original) (citation omitted).

17             In Dukes, the plaintiffs alleged that Wal-Mart had a uniform corporate culture of bias

18     through the discretion of their local managers against women resulting in discriminatory pay and

19     promotions at its 3,400 retail locations.  Id. at 2547-48.  The District Court and the Ninth Circuit

20     approved class certification but the Supreme Court reversed holding class certification was not

21     appropriate because plaintiffs failed to establish the existence of a common question.  Id. at 2556-57.

22     Wal-Mart's corporate policy forbade sex discrimination and the company had penalties for denials

23     of equal opportunity.  Id. at 2553.  The evidence showed that the pay and promotion decisions were

24     made on a local level based on the discretion of individual managers.  Id. at 2554.  The local

25     supervisors had discretion over employment matters and in a company as large as Wal-Mart, the

26     Court determined that it is unlikely that all managers would exercise their discretion in a common

27

28             [3]The Court notes that Millard does not argue that the claim under Labor Code section 212 was
       subject to the commonality analysis under Dukes.  (Dkt. No. 86.)  The analysis of Labor Code section
       212 will be conducted when discussing Rule 23(b)(3).

way. Id. at 2554-55. The Court explained that the plaintiffs failed to identify a common mode of exercising discretion that pervaded the entire company. Id. Therefore, the Court reversed the Ninth Circuit holding that Plaintiff had failed to meet the commonality requirement under Rule 23(a)(2). Id. at 2557.

## 1.    Meal and Rest Periods

Plaintiffs argue that the common and predominant legal question is whether Millard's compensation system, including the lack of policy and procedures to pay additional "premium" pay for unprovided meal or rest breaks, is consistent with its obligation under California law. Therefore, according to Plaintiffs, if the time records show that a meal or rest break was not taken then those employees should have been paid the "premium." Defendants oppose arguing that the class consisting of about 2,600 employees at 15-25 different locations in California was supervised by different Project Managers at each location. Moreover, they contend that this claim is inherently individualized because the Court will need to determine why meal periods were missed for each employee.

California Labor Code section 226.7 provides "[n]o employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." Cal. Labor Code § 226.7(a). "If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Labor Code § 226.7(b). In addition, Cal. Labor Code section 512 provides:

> (a) An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.

Cal. Labor Code § 512.

According to Industrial Welfare Commission Order No. 4-2001, "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the

day's work the meal period may be waived by mutual consent of the employer and the employee."

(Dkt. No. 52-10, Wage Order 4-2001 § 11(A).)  In addition, "[e]very employer shall authorize and

permit all employees to take rest periods, which insofar as practicable shall be in the middle of each

work period.  The authorized rest period time shall be based on the total hours worked daily at the

rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof."  (Dkt. No. 52-10,

Wage Order 4-2001 § 12(A).)

        In this case, it is undisputed that Millard employs a Project Manager at each location who is

responsible for scheduling employees' work schedules as well as their meal and rest times.  (Mot. at

4; Opp. at 2-3.)  The Project Manager's duties are described in the Employee Handbook.  It

provides,

> Each Millard supervisor/manager sets work days and hours for the members of
> his/her department, based upon individual business needs and the needs of the
> customer.  The work hours at your facility and for your position may vary from
> the standard office hours as well as from hours at other job sites, in other
> departments or of other employees within your department.  It is the
> responsibility of your supervisor/manager to set your work hours to meet the
> department's specific needs.  Your lunch and break times will also be set by your
> supervisor/manager.  Millard Management has the right to change these work
> hours at any time.

(Dkt. No. 54-1, Employee Handbook for Employees Covered by a Collective Bargaining

Agreement, pg. 10; see also Dkt. No. 54-2, California Employee Handbook for Hourly Service

Employees Not Covered by a Collective Bargaining Agreement, pg. 9.)

        Millard Mall's handbook also provides the following:

> If you work six or more hours in a day, you are required to take an off-duty meal
> break of at least 30 minutes during which you must 'clock out.'  If you work more
> than three and one-half hours in a day, you are permitted to take a 10-minute rest
> break for every four hour period of time you work.  Rest breaks should be taken
> approximately in the middle of your work shift or the first four hour period.

(Dkt. No. 54-2, California Employee Handbook for Hourly Service Employees Not Covered by a

Collective Bargaining Agreement, pg. 9.)[4]  Millard Mall instructs it supervisory employees to

provide meal and rest breaks to their employees in compliance with California law.  (Dkt. No. 68-6,

Joseph Decl. ¶ 4.)  It is Millard's policy to provide legally required meal and rest breaks which are

---

        [4]The Court notes that the Millard handbook provides for a 30 minute meal break after six hours
of work while Labor Code section 512 and Wage Order 4-2001 require a 30 minute meal break after five
hours of work per day.  The parties do not dispute this discrepancy.

contained in the Employee Handbook and reinforced by legally mandated postings and by Millard's managers and supervisors.  (Id. ¶ 4.)  In addition, because Millard operates in different types and sizes of shopping malls, the locations where each employee takes his/or meal or rest break varies.  (Id.)

Similar to the facts in Dukes, Millard had a meal and rest period policy conforming to the applicable laws and wage orders.  See Dukes, 131 S. Ct. at 2553.  In addition, the Project Managers at each location have discretion in scheduling the employees' work schedule and meal and rest periods.  See id. at 2554.  Therefore, Plaintiffs have not shown that there was a common policy that pervaded the entire company where Project Managers prevented employees from taking meal breaks and did not authorize and permit employees to take rest breaks.

Furthermore, Plaintiffs incorrectly pose the commonality issue under Rule 23(a)(2) as whether Millard's compensation system or policy and procedure of not paying a "premium" for missed meal and rest is in compliance with California law.[5]  Plaintiffs ignore the underlying threshold question of whether Defendants failed to "provide" meal breaks or "authorize and permit" employees to take rest breaks and the reasons why meal and/or rest periods were not taken.

Under California law, an employer is required to "authorize and permit" employees to take a 10 minute rest break for every four hours worked and the employer is required to "provide" an opportunity for employees to take a 30 minute meal break when they work more than five hours.  Cal. Labor Code § 226.7(a); (Dkt. No. 52-10, Wage Order 4-2001 § 12(A)).  The meaning of "provide" under Labor Code sections 226.7 and 512 is currently pending before the California Supreme Court in Brinker Rest. Corp. v. Superior Court, 85 Cal. Rptr.3d 688 (2008).

While this issue is currently pending before the California Supreme Court and because the California Supreme Court has not interpreted the meaning of "provide" in the Labor Code, district courts have concluded that the California Supreme Court would adopt the interpretation of "provide" to mean "make available" not "ensure taken."  As a result, district courts have denied class certification where a plaintiff has failed to show common proof that its employer prevented the

---

[5] Plaintiffs cite to Ortega v. J.B. Hunt Transport, Inc., 258 F.R.D. 361, 367 (C.D. Cal. 2009) in support of their argument that the Court look at Defendant's compensation system.  However, Ortega is distinguishable as it concerned truck drivers where there was no company wide policy on meal and rest breaks and no supervisors overseeing the truck driver's hours worked and meal and rest breaks.

1    putative class from taking required breaks.  See Hadjavi v. CVS Pharm., Inc., 2011 WL 3240763

2    (C.D. Cal. 2011) (denying class certification because plaintiffs failed to establish existence of a

3    common core of facts or shared legal issues); Brown v. Federal Express Corp., 249 F.R.D. 580, 587

4    (C.D. Cal. 2008) (plaintiffs showed no method of common proof to establish Fed Ex's policies

5    prevented the putative class from taking required breaks); Kenny v. Supercuts, Inc., 252 F.R.D. 641,

6    646 (N.D. Cal. 2008) (denying class certification because individual issues predominate as the court

7    would need to determine why each class member did not clock out for a meal break on any

8    particular day); Salazar v. Avis Budge Group, Inc., 251 F.R.D. 529, 534 (S.D. Cal. 2008) (denying

9    class certification because individual issues predominate to determine whether defendants forced

10   plaintiffs to forgo missed meal periods).  Therefore, under the current caselaw, Plaintiffs must show

11   that Defendants forced the putative class to forego meal and/or rest periods.

12         Plaintiffs provided 112 questionnaires filled out by putative class members.  (Dkt. No. 56-2,

13   112 Completed Questionnaires.)  Of the 112 questionnaires, 94 indicated that they were not provided

14   with the required rest breaks and 56 indicated that they were not provided the required meal breaks.

15   (Dkt. No. 52, Jusuf Decl. ¶ 39.)  In opposition, Defendants provide evidence that of the 112

16   questionnaire respondents, 13 released all wage and hour claims in connection with a settlement of

17   an unrelated union grievance.  (Dkt. No. 68-6, Joseph Decl. ¶ 8; Joseph Decl., Ex. 3.)  In addition,

18   Defendants identified that ten of the 112 questionnaires respondents provided conflicting statements

19   about meal and/or rest breaks. (See Dkt. No. 69-2, Exs. 105, 125, 127, 153, 174, 205, 206, 208 ; Dkt.

20   No. 69-1, Exs. 41, 86.)  Defendants have also provided declarations from over 200 putative class

21   members disputing Plaintiffs' claims.  (Dkt. No. 69-1.)

22         As to the conflicting statements made on the questionnaire and in a prior declaration, Jose

23   Garcia answered on September 20, 2010, that he had not always been able to take a ten minute rest

24   break because the "[t]here was too much work to do, and I was not allowed to leave my work for a

25   rest break."  (Dkt. No. 56-2, Jose Garcia Questionnaire, page 90.)  As to meal breaks, he answered

26   that he had not always been able to take a 30 minute uninterrupted meal break because "I was

27   permitted to clock out for lunch then the supervisor would make me work on my lunch break or 10

28   min breaks."  (Id.)  However, in an earlier sworn declaration, Jose Garcia stated on February 2, 2010

     that "I usually take my 30 minute uninterrupted meal breaks at 10:30 a.m. . . . I have always taken

my thirty minute meal break at the appropriate time in accordance with Millard's policy.  I have never decided not to take my meal breaks.  My thirty minute meal breaks are never interrupted by work. . . . The supervisor informs me when to take my ten minute breaks, but the time is also written in the schedule. I just have to notify the supervisor when I am going to take it. . . I do not work during my ten minute rest breaks. I have never decided not to take my [ten/fifteen] minute rest breaks.  During my ten minute rest breaks, I usually rest in the break room. . . . None of my managers at Millard have told me or given me the impression that I should not take my meal breaks or rest breaks."  (Dkt. No. 69-2 at 34, Garcia Decl. ¶¶ 5, 7, 8.)

The conflicting evidence reveals that Millard did not have a uniform practice of denying employees their meal breaks and/or rest breaks.  Some employees stated that they missed meal and rest breaks while others stated they always received their meal and rest breaks and others provided contradictory statements.  (Dkt. No. 56-2, Questionnaires; Dkt. Nos. 69-1, 69-2.)  Because of the varying declarations and conflicting facts of the putative class members,  Plaintiffs have failed to show that Defendants had a common policy that "prevented" employees from taking meal breaks and/or failed to "permit and authorize" employees to take rest breaks under Rule 23(a)(2).  See Garcia v. Sun Pacific Farming Co-op, Inc., 359 Fed. Appx. 724, 726 (9th Cir. 2009) (affirming district court's conclusion that plaintiffs failed to show commonality because the conflicting employee declarations showed the "[in]consistent application of the wage and hour laws"); Rosales v El Rancho Farms, 2012 WL 292977 (E.D. Cal. Jan. 31, 2012) (plaintiffs failed to establish commonality because of conflicting testimony of Plaintiffs' and Defendant's declarants).

**2.    Split Shift Pay**

Plaintiffs argue that the common and predominant legal question is whether Millard's compensation system, including the lack of policy and procedure to pay split-shift pay for any split-shift worked by an employee, is consistent with Millard's obligation under California Law to pay all wages earned.  (Mot. at 12.)  In opposition, Defendants contend that Plaintiffs have not satisfied commonality under Rule 23(a)(b).

A "split shift" is defined as "a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."  (Dkt. No. 52-10, Wage Order 4-2001 § 2(Q)).  When an employee works a split shift, "one (1) hour's pay at the

1    minimum wage shall be paid in addition to the minimum wage for that workday . . . ." (Id. § 4(C).)

2         It is Defendant's policy to not schedule or require its employees to work split shifts. (Dkt

3    No. 68-6, Joseph Decl. ¶ 4.) Moreover, the union agreement specifically provides that the

4    employees' shifts be continuous. (Id.) As described above, Millard employs a Project Manager at

5    each location who is responsible and has discretion in scheduling employees' work schedules. (Mot.

6    at 4; Opp. at 2-3.) Plaintiffs have not shown that there was a common policy where Project

7    Managers scheduled split shift work to employees and failed to pay them.

8         Plaintiffs provided 112 questionnaires filled out by putative class members. (Dkt. No. 56-2,

9    112 Completed Questionnaires.) Out of the 112 questionnaires filled out by putative class members,

10   50 indicated that they worked split-shifts. (Dkt. No. 52, Jusuf Decl. ¶ 39.) In opposition,

11   Defendants provide additional evidence that of the 112 questionnaire respondents, thirteen released

12   all wage and hour claims in connection with a settlement of an unrelated union grievance and ten

13   provided conflicting statements about split-shift breaks. (Dkt. No. 68-6, Joseph Decl. ¶ 8; Joseph

14   Decl., Ex. 3; Dkt. No. 69-2, Exs. 105, 125, 127, 153, 174, 205, 206, 208; Dkt. No. 69-1, Exs. 41,

15   86.) Defendants have also provided declarations from over 200 putative class members disputing

16   Plaintiffs' claims. (Dkt. No. 69-1.)

17        In addition, Defendants attempted to serve 43 questionnaire respondents with deposition

18   subpoenas but was only able to personally serve 23 individuals and only 10 appeared at the

19   deposition. (Opp. at 6.) These depositions demonstrate the contradictory responses provided by the

20   putative plaintiffs. One respondent stated on the questionnaire that she worked split shifts but at the

21   deposition she did not remember if she had worked a split shift or not. (Dkt. No. 68-4, Ex. 10,

22   Arcelia Pizano-DeVerduzco Depo. 57:5-25; 63:10-25; 64:1-4.) She also thought the question about

23   split-shift work was asking about working mid-day shifts, not a morning and evening shift. (Id.)

24   Another respondent stated that his response "yes" to the questionnaire regarding the split shift was

25   inaccurate because he never worked a split shift and probably read the question wrong. (Dkt. No.

26   68-4, Ex. 11, Miguel Rodriguez Depo. 43:7-10; 44:1-25; 45:1-22.) Two other respondents also

27   indicated that their "yes" response on the questionnaire regarding whether they worked split shifts

28   were inaccurate. (Dkt. No. 68-4, Ex. 8, Carlos Ortiz Mendez Depo. 5:25-51:19, 59:5-60:6; Ex. 12,

     Gilberto Solis Depo. 44:17-22.) Out of the ten depositions taken, four of the respondents indicated

1   that their responses to the questionnaire regarding whether they worked split shifts were not reliable

2   The conflicting declarations, differing questionnaire responses and contradictory deposition

3   testimonies failed to show that there are questions of fact and law that are common to the class.

4        Plaintiffs also focuses on Defendants' compensation system regarding whether Defendants

5   had a policy to pay split-shift work and does not look at whether the split shift work schedule was

6   established by Defendants and if employees worked split-shifts, then the reasons why the split-shifts

7   were worked.  Individual inquiries will need to occur to determine whether split shift work was

8   established by Defendants and the reasons why they were worked.  Accordingly, Plaintiffs have

9   failed to show that there is a common question of law or fact as to the split-shift work issue under

10  Rule 23(a)(2).

11       **3.      Waiting Time Penalty**

12       Plaintiffs argue that Defendants are liable for the waiting time penalty for failing to pay

13  conceded wages within the time frame prescribed by statute.[6]  Defendants argues that class treatment

14  is inappropriate because this claim can only be litigated on an individual basis.

15       California requires employers to pay terminated employees' wages within prescribed

16  timelines, and provide for penalties for the willful failure to do so.  Cal. Labor Code §§ 201, 202

17  203.  Specifically, Labor Code section 201 provides that if an employer discharges an employee,

18  wages earned and unpaid at the time of the discharge are due and payable immediately. Cal. Labor

19  Code § 201a.  Section 202 provides that a quitting employee who gives more than 72 hours' notice

20  is also entitled to receive wages on the last day of work or if no notice is given, the wages must

21  become payable within 72 hours.  Cal. Labor Code § 202(a).  The willful failure to pay wages

22  subjects an employer to penalties.  Cal. Labor Code § 203.

23       Plaintiff Gonzalez's conceded wages was not available for her to pick up until approximately

24  two weeks after she was discharged.  (Dkt. No. 49, Gonzalez Decl. ¶ 8.)  Lopez states that she did

25  not receive her final pay check until about a month after she was terminated.  (Dkt. No. 50, Juan

26

---

27
28       [6]Plaintiffs also contend that Defendants are liable for the waiting time penalty by not including
     in the final pay checks the unpaid split-shift pay and/or "premium" pay due for unprovided meal and
     rest periods.  Since this Court has concluded that there are no common issues as to the meal and rest
     periods and split-shift claims, the Court need not address whether Defendants' failure to pay "premium"
     pay or split-shift pay is appropriate for class treatment.

Decl. ¶ 8.)  Plaintiffs provide a schedule showing the termination dates and "date of the last check received" on a small sampling of termination data provided by Millard.  (Dkt. No. 55-7, Jusuf Decl., Ex. 31; Dkt. No. 52-4, Jusuf Decl., Ex. 4, Joseph Depo. at 53:13-15.)  Out of the total of 84 terminated employees, 23 employees did not receive their checks within the required statutory period and 61 employees timely received their checks within the appropriate statutory period.  (Dkt. No. 55-2, Jusuf Decl., Ex. 31.)  Specifically, Plaintiffs note that five employees that were involuntarily terminated did not receive their paychecks immediately after termination.  The Court concludes that the small sampling of termination data does not show commonality that most or all employees were not paid their wages timely after termination.

In addition, under Labor Code section 203, a waiting time penalty applies only if an employer willfully fails to pay wages owed in accordance with sections 201 and 202.  Cal. Labor Code § 203(a).  Willfulness "raises an inherently fact intensive inquiry focusing on state of mind and surrounding circumstances.  If a final pay subclass is certified, mini-trials would be required for each class member to determine whether waiting time penalties should be imposed, including whether an employer acted willfully and whether there is a good faith dispute that wages are due."  In re Taco Bell Wage and Hour Actions, 2011 WL 4479730 at *5 (E.D. Cal. 2011) (citation omitted).

In this case, the evidence does not show that there are common issues of fact and law regarding whether Defendants violated Labor Code section 203.  In addition, a determination of willfulness will require individualized examination as to each employee.  Accordingly, Plaintiffs have failed to demonstrate a common issue of fact or law regarding the waiting time penalty claim under Rule 23(a)(2).

**E.      Federal Rule of Civil Procedure 23(b)(3)**

Plaintiffs also seek certification under Rule 23(b)(3).  Under Rule 23(b)(3), certification is appropriate if: (i) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).  When the court must determine the merits of an individual claim to determine who is a member of the class, then class treatment is not appropriate.  Herrera v. LCS Fin. Servs. Corp., 274 F.R.D. 666, 672-73 (N.D. Cal. 2011); 5 James W. Moore, Moore's Fed. Practice § 23.21[3][c] (2011).  The

1    predominance is a more rigorous requirement than the Rule 23(a)(3) commonality prerequisite.

2    Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997).

3        The analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or

4    law have been established pursuant to Rule 23(a)(2). . . ."  Hanlon v. Chrysler Corp., 150 F.3d 1011,

5    1022 (9th Cir. 1998).  Therefore, since the Court determined that there was no commonality as to the

6    meal and rest period, split-shift, and waiting time penalty claims, the Court need not address whether

7    Rule 23(b)(3) requirements have been met.

8        **1.    Predominance**

9        Plaintiffs argue that as to the incompliant paychecks claim, the common legal question of

10   whether Millard violated Labor Code section 212[7] by failing to pay its California employees with

11   pay checks that display a California address where the checks could be cashed and failing to enter

12   into an arrangement to allow the employees to cash their pay checks without any fees or discount

13   until after March 1, 2010 predominates over any individual issues.  Defendants contend that their

14   paychecks have contained the name and address of a California bank that could be cashed without

15   fee or delay since June 1, 2009.

16       "The predominance inquiry of Rule 23(b)(3) asks 'whether proposed classes are sufficiently

17   cohesive to warrant adjudication by representation.' The focus is on 'the relationship between the

18   common and individual issues.'"  Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1019 (9th Cir.

19   2011) (quoting Mevorah v. Wells Fargo Home Mortg., 571 F.3d 953, 957 (9th Cir. 2009).

20       Labor Code section 212(a) provides:

21           No person, or agent or officer thereof, shall issue in payment of wages due, or to
             become due, or as an advance on wages to be earned:
22           (1) Any order, check, draft, note, memorandum, or other acknowledgment of
             indebtedness, unless it is negotiable and payable in cash, on demand, without
23           discount, at some established place of business in the state, the name and address
             of which must appear on the instrument, and at the time of its issuance and for a
24           reasonable time thereafter, which must be at least 30 days, the maker or drawer
             has sufficient funds in, or credit, arrangement, or understanding with the drawee
25           for its payment.

26

27   _____

28       [7]Although Defendants claim that they do not concede that Plaintiffs have met the requirements
     under either Rule 23(a) or Rule 23(b)(2), Defendants have not presented any argument that Plaintiffs
     have failed to meet the requirements of Rule 23(a) for violations of Labor Code section 212.  (Opp. at
     4.)  Therefore, the analysis of violations of Labor Code section 212 begins with Rule 23(b)(3).

1  Cal. Labor Code § 212(a).

2        Defendants concede that their paychecks did not contain the name and address of a

3  California bank that could cash the paycheck without a fee or delay prior to June 1, 2009.  (Dkt. No.

4  68-6, Joseph Decl. ¶ 6.)  Prior to June 2009, the paychecks were drawn out of a bank located in

5  Lincolnwood, Illinois.  (Dkt. No. 52-6, Jusuf Decl., Ex. 6, Wilk Depo. at 71:11-72:6.)  Payroll was

6  also handled centrally in Illinois.

7        Around April 28, 2009[8], Millard entered into a Payable if Desired ("PID") agreement with its

8  bank, JP Morgan Chase ("Chase") to allow Millard to print a California address of one of the

9  branches of Preferred Bank which would allow employees to cash their paychecks without fee or

10 delay at any California branch of the Preferred Bank.  (Dkt. No. 53-2, Jusuf Decl., Ex. 14; Dkt. No.

11 68-4, Black Decl., Ex. 4, Wilk Depo. at 70:22-71:2; 77:11-25.)  Thereafter, JP Morgan Chase

12 notified Millard that it would no longer offer the PID agreement in California after March 31, 2010

13 because Washington Mutual Bank was going to become Chase.  (Dkt. No. 68-4, Black Decl., Ex 4,

14 Wilk Depo. at 117:4-8; 119:1- 120:1.)  As a result, on March 1, 2010, Millard entered into an

15 agreement with Chase to allow its employees in California to cash their paychecks without any fees

16 or discount by authorizing Chase to include the check cashing charges as part of the Company's

17 account reconcilement charges each month.  (Dkt. No. 53-8, Jusuf Decl, Ex. 20; Dkt. No. 68-4,

18 Black Decl., Ex. 4, Wilk Depo. at 112:16-113:13.)  As a result, the PID agreement was discontinued.

19 (Id., Ex. 21.)

20        As to the incompliant paychecks, the parties dispute whether the issue of whether

21 Defendants violated Labor Code section 212 during two time periods predominate over individual

22 ones.

23        1)    April 1, 2005 to June 1, 2009 (Defendants concede that they issued out-of-state

24              paychecks.)

25

26 ─────────────

27      [8]Although the PID agreement is dated April 28, 2009, Defendants state that it was after June 1,
   2009 when a California address of one of the branches of Preferred Bank was printed on the paychecks.
28 (Dkt. No. 68-6, Joseph Decl. ¶ 6.)  In his deposition, Wilks testified that the agreement was implemented
   in May 2009 shortly after its execution.  (Dkt. No. 68-4, Black Decl., Ex. 4, Wilk Depo. at 109:1-4.)
   Plaintiffs clarify the discrepancy stating the June 1, 2009 is the date that the April 28, 2009 PID
   agreement was implemented. (Reply at 5.)

2)     June 1, 2009 to March 1, 2010[9] (PID agreement phase)

The parties do not dispute the facts of the first phase; however, Defendants argue that Plaintiffs have failed to show that common issues of fact predominate because there is no evidence that a class of employees encountered delays and/or fees in cashing their paychecks because the paychecks were issued from an out-of-state bank.  However, Defendants' argument concerns the penalty to be imposed and not liability.  See Solis v. Regis Corp., 612 F. Supp. 2d 1085, 1087 (N.D. Cal. 2007) (granting plaintiff's motion for summary judgment because defendants violated section 212 even though not every class member was injured).  Prior to June 1, 2009, Defendants had a company-wide policy emanating centrally from Illinois of issuing paychecks to all California employees from an out-of-state bank.  Therefore, common issues predominate over individual issues regarding whether Defendants violated Labor Code section 212 prior to this time.

During June 1, 2009 to March 1, 2010, Plaintiffs argue that although Millard had an agreement with Chase to allow Millard to print a California address of one of the branches of Preferred Bank, it did not have an agreement with Chase to allow California employees to cash their paychecks without any fees or discount.  Defendants contend that no employee would have to pay a fee or have a hold placed on their checks because of the PID agreement.

According to the 112 questionnaires presented by Plaintiffs, 58% indicated that they never had to pay a check cashing fee to cash their Millard Mall paychecks while 42% indicated that they paid a check cashing fee but did not state whether it was because they cashed their paycheck at a check cashing place that normally charges a fee regardless of the information on the paycheck or whether the fee was reimbursed with a coupon or voucher to be used towards the purchase of goods. (Dkt. No. 68-4, Black Decl. ¶ 15.)

Ten of the respondents who stated that they paid a check cashing fee in their questionnaire swore under penalty of perjury in a declaration that they never incurred a check cashing fee when they cashed their paychecks.  (See Dkt. No. 69-2, Exs. 105, 125, 127, 153, 174, 205, 206, 208 ; Dkt. No. 69-1, Exs. 41, 86.)  Defendants also provide a list of over 200 putative class plaintiffs that have stated under penalty of perjury that they have never had a hold placed on their paychecks, never had

---

[9]The effective date of the agreement was March 31, 2010.  (Dkt. No. 68-4, Black Decl., Ex 4, Wilk Depo. at 117:4-8.)

1   to pay a fee to cash their paychecks, and those who paid a check cashing fee did so voluntarily by

2   cashing their paychecks at a check cashing business that charges a fee.  (Dkt. No. 68-3 at 56-60.)

3   After June 1, 2009, Millard had a PID agreement with JP Morgan Chase.  The parties dispute

4   whether the PID agreement was to provide a way for California employees to cash their paychecks

5   without any fees or discount or delays.  As a company policy, Millard complied with California law

6   by providing a California address where employees could go to cash their paychecks.  The

7   underlying issue is whether the fees that were charged, if at all, were due to Defendants' PID

8   agreement or the employees' decision to cash their checks at a check cashing place that normally

9   charges a fee or whether the fee was reimbursed with a voucher to be used to purchase goods.

10  Therefore, in resolving this question, individual issues will predominate over common questions of

11  law and fact.  Therefore, between June 1, 2009 to March 1, 2010, Plaintiffs have not shown that

12  common issues of fact and law will predominate over individual claims under Rule 23(b)(3).

13  Accordingly, the Court concludes that as to the period from April 1, 2005, to June 1, 2009,

14  common issues predominate over individual issues as to Defendants' compliance with Labor Code

15  section 212.  As to the period from June 1, 2009 to March 1, 2010, the Court concludes that

16  individual issues predominate over common questions of law and fact.

17      **2.    Superiority**

18  Plaintiffs argue that the class action is the superior means to adjudicate the claim because the

19  putative class members are low wage earners who may not even be aware of their rights under the

20  Labor Code.  In addition, since the potential recovery is relatively small, the costs necessary to

21  maintain a lawsuit makes individual suits not feasible.  In opposition, Defendant contends that there

22  are enough monetary incentives as to damages, penalties and attorneys' fees so that an individual

23  plaintiff will be provided with complete relief.

24  A class action may be superior "[w]here classwide litigation of common issues will reduce

25  litigation costs and promote greater efficiency."  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227,

26  1234 (9th Cir. 1996).  It is also superior when no realistic alternative to a class action exists.  Id. at

27  1234-35.  The Court considers the following factors in considering the superiority prong: (1) the

28  class members' interest in individually controlling the prosecution or defense of separate actions; (2)

the extent and nature of any litigation concerning the controversy already begun by or against class

members; (3) the desirability or undesirability of concentrating the litigation and of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3) (A)-(D).

As to the claim under Labor Code section 212 from April 1, 2005 to June 1, 2009, a class action would be the superior method for managing litigation as common issues exist.   However, from June 1, 2009 to March 1, 2010, the Court concluded that individual issues predominate.  Therefore, the more individual issues predominate, the less likely that a class action would be the superior method of resolving the controversy.

The Court concludes that Plaintiffs have satisfied superiority as to the claim under Labor Code section 212 from April 1, 2005 to June 1, 2009.  The Court also concludes that Plaintiffs have not satisfied superiority as to the claim under Labor Code section 212 from June 1, 2009 to March 1, 2010.

**F.      Unfair Competition Law, Cal. Business and Professions Code § 17200**

The Unfair Competition claim is derivative of the claims under the Labor Code discussed above.  Therefore, since the Court has determined that the labor code violations, except Labor Code section 212 as to the time period from April 1, 2005 to June 1, 2009, are not suitable for class treatment, this claim is also not suitable for class treatment.  See White v. Starbucks Corp., 497 F. Supp. 2d 1080, 1089-90 (N.D. Cal. 2007) (dismissing section 17200 claim where underlying claims were invalid); see also Norris-Wilson v. Delta-T Group, Inc., 270 F.R.D. 596, 611 (S.D. Cal. 2010) (citing Ruiz v. Affinity Logistics Corp., 2009 WL 648973 *8 (S.D. 2009) (class wide adjudication of unfair business practices claim turns on adjudicability of underlying causes of action).

In sum, the Court grants Plaintiffs' motion for class certification as to the UCL claim for violation of Labor Code section 212 from April 1, 2005 to June 1, 2009.  The Court denies Plaintiffs' motion for class certification as to the UCL claims as to all remaining labor code violations.

**G.      Civil Penalty Pursuant to the Private Attorneys General Act of 2004 ("PAGA")**

The purpose of the PAGA is to create a "means of 'deputizing' citizens as private attorneys general to enforce the Labor Code."  Brown v. Ralphs Grocery Co., 197 Cal. App. 4th 489, 501 (2011).  The relief is mainly "for the benefit of the general public rather than the party bringing the

action." Id. (citation omitted).  Under the PAGA, an employee may bring a private civil action for Labor Code violations committed against the employee by his or her employer.  Labor Code § 2699(c).  The "aggrieved employee" may file a civil action "on behalf of . . . other current or former employees against whom one or more of the alleged violations was committed."  Labor Code 2699(a).  The PAGA provides no specific class certification requirements.  Brown v. Ralphs Grocery Co., 197 Cal. App. 4th 489, 501 (2011).   In Aria v. Superior Court, the California Supreme Court held that an employee does not need to satisfy class action requirements to bring a representative action under PAGA.  Aria v. Superior Court, 46 Cal. 4th 969, 981-985 (2009).

Plaintiffs bring a PAGA claim for Defendants' alleged violation of Labor Code section 212. (SAC ¶¶ 61-72.)  Therefore, Plaintiffs need not satisfy the class action requirements and may bring a representative action under PAGA.  See Aria, 46 Cal. 4th at 981-85.

<strong>Conclusion</strong>

Based on the above, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion for class certification.  Specifically, the Court GRANTS Plaintiffs' motion for class certification only as to Class A, as modified as, "[a]ny and all persons who have been employed directly or indirectly by The Millard Group, Inc. and/or Millard Mall Services, Inc. in California at any time from April 1, 2005 to June 1, 2009."  The Court DENIES Plaintiffs' motion for class certification as to all remaining claims.  The Court also GRANTS Plaintiffs' and Defendants' requests for judicial notice.

IT IS SO ORDERED.


DATED:  February 28, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge