UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE GONZALEZ, NORMA LOPEZ JUAN, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MILLARD MALL SERVICES, INC., THE MILLARD GROUP, AND DOES 1 THROUGH 50,<br><br>Defendants. | Civil No.   09cv2076-AJB(WVG)<br><br>**ORDER DENYING DEFENDANT TMGI'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. No. 70.]** |

Before the Court is Defendant The Millard Group, Inc.'s motion for summary judgment on the ground that it was not the employer of Plaintiffs and the putative class members. Plaintiffs filed an opposition and Defendant filed a reply. The motion is submitted on the papers without oral argument, pursuant to Civil Local Rule 7.1(d)(1). After a review of the briefs, supporting documentation, and applicable law, the Court DENIES Defendant's motion for summary judgment.

**Procedural Background**

This action was originally filed in the Superior Court of California for the County of San Diego on April 1, 2009. On September 22, 2009, the case was removed to this Court pursuant to the Class Action Fairness Act. (Dkt. No. 1.) On February 11, 2010, Defendants filed a motion for judgment on the pleadings. (Dkt. No. 16.) On April 7, 2010, the Court issued an order denying motion for judgment on the pleadings and granted Plaintiffs' request to file a second amended complaint. (Dkt. No. 28.) A second amended complaint ("SAC") was filed on April 12, 2010.

1  (Dkt. No. 31.)  On May 5, 2010, Defendants filed an answer.  (Dkt. No. 36.)  On October 29, 2010,
2  Plaintiffs filed a motion to certify class action.  (Dkt. No. 48.)  On February 4, 2011, Defendant The
3  Millard Group, Inc. filed the instant motion for summary judgment.  (Dkt. No. 70.)  Plaintiffs filed
4  an opposition on February 18, 2011.  (Dkt. No. 74.)  On February 25, 2011, Defendant filed a reply.
5  (Dkt. No. 75.)  On March 14, 2011, the case was transferred to the undersigned judge.  (Dkt. No.
6  82.)  On February 29, 2012, the Court granted in part and denied in part Plaintiffs' motion to certify
7  class action.  (Dkt. No. 89.)

## Factual Background

9  Plaintiffs Guadalupe Gonzalez and Norma Lopez Juan brought a class action complaint
10 against Defendants Millard Mall Services, Inc. ("Millard Mall") and The Millard Group, Inc.
11 ("TMGI") (erroneously sued and served as "The Millard Group").  (Dkt. Nos. 31, 36.)  Defendants
12 are in the business of providing janitorial services to shopping malls and other commercial facilities.
13 (Dkt. No. 74-9, Jusuf Decl, Ex. 8, Joseph Depo. at 13:11-22.)

14 Millard Mall employs janitors in 32 states, including California.  (Dkt. No. 70-2, Black
15 Decl., Ex. 3, Kwiatowski Depo. at 24:9-23.)  Millard Mall is qualified to do business in California,
16 performs janitorial work in California and has around 1,500 employees.  (Dkt. No. 70-3, Joseph
17 Decl. ¶ 3.)  On the other hand, TMGI is an Illinois company which does business in four to five
18 states in the mid-West and does not employ anyone in California.  (Id.)

19 According to Defendant, Millard Mall is a separate corporate entity from TMGI.  (Id. ¶ 4.)
20 Both are merely affiliates or "sister companies" which operate under common ownership along with
21 a number of other companies.  (Id. ¶ 4.)  Millard Mall, TMGI and other companies are affiliates in a
22 group of companies loosely referred to as "The Millard Group."  (Id.)  "The Millard Group" is not a
23 formal legal entity but a named used to refer to a group of affiliated companies that are under
24 common ownership."  (Id.)  Leslie Joseph, Human Resources Manager for TMGI, states that the
25 employment documents state "The Millard Group"; however, that references the group of affiliated
26 companies that operate under common ownership which include Millard Mall, TMGI, Boston
27 Window Cleaning and others.  (Id. ¶ 9.)  The reference of "The Millard Group" in employment
28 papers, such as the job application, was not to TMGI.  (Id.)  "The Millard Group" documents were

used so they could use one set of hiring documents as a convenience to the Human Resources Department.  (Id.)

## Discussion

**A.     Judicial Estoppel**

First, Plaintiffs argue that TMGI is judicially estopped from claiming that it was not an employer of Plaintiffs and the putative class members after admitting that it was in its Notice of Removal.  Defendant argues that TMGI is not estopped from showing that it was not Plaintiffs' employer.

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Pegram v. Herdrich, 530 U.S. 211, 227, n. 8 (2000)).  It is an "equitable doctrine invoked by a court at its discretion."  Id. at 750.  It is "intended to protect the integrity of the judicial process by preventing a litigant from playing fast and loose with the courts."  Whaley v. Belleque, 520 F.3d 997, 1002 (9th Cir. 2008).

"In determining whether to apply the doctrine, we typically consider (1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'"  United States v. Ibrahim, 522 F.3d 1003, 1009 (9th Cir. 2008) (quotation omitted).

The parties dispute the interpretation of Human Resources Manager Leslie Joseph's declaration.  The declaration filed in support of Defendants' removal states,

> [a]s a Human Resources Manager, my responsibilities include employee relations, labor and union relations, creation and implementation of company policies and procedures.  In my capacity as Human Resources Manager, I have personal knowledge regarding the Millard Group, Inc.'[s] employees' positions, hours of work, payroll, wages, hiring, discipline and termination.  Additionally, as Human Resources Manager, I have access to and am familiar with the Company's WinTeam HR Information Systems, which contains payroll and wage information for all Millard employees.

(Dkt. No. 74-2, Jusuf Decl., Ex. 1, Joseph Decl. ¶ 2.)

Plaintiffs argue that these statements are an admission that TMGI was the employer of Plaintiffs and the putative class members.  Defendant contends that this is not an admission as to

which entity employed Plaintiffs and the putative class members. It argues that the statements only assert that Joseph is employed by TMGI, has access to a computer system with information about "all Millard employees," and provides some information about the class members without making any representations as to which Millard entity employs those persons.

The Court agrees with Defendant's interpretation. Joseph's declaration only states that as the Human Resources Manager, she has access to personnel information about TMGI employees. Her declaration is not an admission that TMGI employs Plaintiffs and the putative class members.

Second, Plaintiffs argue that TMGI should be judicially estopped because TMGI has not claimed it did not employ Plaintiffs or the putative class members prior to this motion. Defendant asserts that from the beginning of the action, TMGI has expressly and repeatedly informed Plaintiffs' counsel that it was not the employer of Plaintiffs and the putative class members.

The Answer to the First Amended Complaint and the Second Amended Complaint contain denials that TMGI was Plaintiffs' employer. (Dkt. No. 75-2, Black Decl., Exs. 1, 2.) In February 2010, Defendants' counsel called Plaintiffs' counsel in order to meet and confer regarding a resolution where TMGI would be dismissed without prejudice on the grounds that it was not Plaintiffs' or the putative class members' employer. (Dkt. No. 75-2, Black Decl. ¶ 4.) Defense counsel followed up with an e-mail communication. (Dkt. No. 75-2; Black Decl., Ex. 3.) In discovery responses, Defendants objected to the definition of "Millard" to include any entity other than Millard Mall Services, Inc. (Dkt. No. 75-2, Black Decl., Ex. 4 at 40.) Defendants provided Plaintiffs with corporate documents showing the TMGI and Millard Mall are two separate legal entities. (Dkt. No. 75-2, Black Decl., Ex. 7.)

Contrary to Plaintiffs' conclusory and factually unsupported position that TMGI has not claimed it did not employ Plaintiffs until now, the evidence provided by Defendant shows that throughout the litigation the issue of whether TMGI was an employer of Plaintiffs and the putative class members has been at issue. The Court concludes that judicial estoppel does not apply as Defendant has not provided inconsistent positions during the litigation.

**B.    Legal Standard for Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on

factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

**C.    Employer under California Law**

Defendant TMGI moves for summary judgment that it was not Plaintiffs' and the class

members' employer. Plaintiffs oppose.

The parties rely on the recent opinion from the California Supreme Court in Martinez v. Combs, 49 Cal. 4th 35 (2010) to support their positions. In Martinez, the court held that the California's Industrial Welfare Commission ("IWC")[1] governs the definition of an employer. Id. at 64. The IWC has the authority to promulgate regulations known as "wage orders" governing wages, hours, and working conditions in the State of California. Tidewater Marine Western, Inc. v. Bradshaw, 14 Cal.4th 557, 561 (1996). Currently, there are 16 effective wage orders, most of which cover specific industries. Martinez, 49 Cal.4th at 50.

Under the IWC[2], "employer" means "any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, *or* working conditions of any person." (Dkt. No. 74-7, Jusuf Decl., Ex. 6, Wage Order 4-2001, § 2(H).) Under the IWC's definition, "employ" means to "(a) to exercise control over the wages, hours or working condition, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." Martinez, 49 Cal.4th at 64.

In Martinez, plaintiffs were seasonal strawberry pickers working for Munoz & Sons ("Munoz") who sued for unpaid minimum wages against merchants that purchased strawberries from Munoz. Id. at 42. The merchants moved for summary judgment claiming that they could not be held liable for the alleged wage and hour violations because they were not "employers" of the plaintiffs. Id. at 48. The California Supreme Court held that the produce merchants did not exercise control over the workers' wages and hours and were not liable as "employers" under the IWC's wage order. Id. at 71-74.

In determining whether Defendant Apio, a produce merchant, exercised control over wages, hours or working conditions, the Court explained that Munoz, the strawberry farmer, and not the produce merchant, hired and fired plaintiffs, trained and supervised them, determined their rate and

---

[1] The IWC "is an administrative body within the Division of Labor Standards Enforcement, consisting of five members appointed by the Governor. The commission determines the wages, hours, and working conditions of all employees, except outside salesmen, in 15 industries." Cal. Hotel & Motel Ass'n v. Indus. Welfare Com., 25 Cal.3d 200, 205 (1979).

[2] The parties do not dispute the applicability of Wage Order 4-2001.

1  manner of pay and set their hours.  Id. at 72.  Therefore, the facts did not establish that "Apio's
2  business relationship with Munoz allowed the company to exercise control over Munoz's
3  employees' wages and hours."  Id.

4  In Futrell v. Payday California, 190 Cal. App. 4th 1419 (2010), the California Court of
5  Appeal held that a payroll processing company, that contracted with a company that produced
6  television commercials, was not an employer under the Labor Code.  The court explained that
7  preparation of payroll is largely a ministerial task, that there was no evidence that Payday had the
8  power to cause Plaintiff to work or prevent him from working and Payday did not have any control
9  over Plaintiff's work activities.  Id. at 1432-35.  In Futrell, evidence showed that Payday issued
10 paychecks drawn on its own bank account, and timecards, employee information sheets,
11 employment eligibility verification, and W-4 employee withholding certificates were provided by
12 Payday.  Id. at 1427.  The pay stubs identified Payday as the "employer of record" and W-2 forms
13 identified Payday as Futrell's "employer."  Id.  Payday was considered an employer by the IRS for
14 purposes of income tax and unemployment insurance.  Id.  Payday also paid premiums for workers'
15 compensation insurance and unemployment insurance.  Id.  The court of appeal concluded that these
16 facts did not support the conclusion that Payday exercised control over Plaintiff's wages.  Id. at
17 1432-33.

18 In this case, the parties dispute whether TMGI exercised control over the wages, hours or
19 working conditions of Plaintiffs and the putative class members.

20 **1.  Exercise Control Over Wages, Hours or Working Conditions**

21 Defendant argues that Plaintiffs cannot establish that TMGI controlled their wages, hours or
22 working conditions.  Plaintiffs oppose arguing TMGI directly and/or indirectly controlled the wages,
23 hours and working conditions of Plaintiffs and the putative class members.

24 The parties do not dispute that TMGI's human resources department provided payroll
25 services and human resources support to Millard Mall.  (Dkt. No. 70-5, Carter Decl. ¶ 8; Opp. at
26 11[3].)  Paychecks for the Millard Group and TMGI are processed in Lincolnwood, Illinois.  (Dkt. No.
27 74-9, Jusuf Decl., Ex. 8, Joseph Depo. at 55:1-56:21.)  The payroll manager handles payroll for both
28

[3]Page numbers are based on the CM/ECF pagination.

TMGI and the Millard Group. (Id. at 56:22-57:16.) In addition, Defendant maintains its corporate office in Lincolnwood, Illinois where the company's employment policies and procedures emanate. (See Dkt. No. 74-9, Jusuf Decl., Ex. 8, Joseph Depo. at 8:10-14; 53:5-9; 60:11-62:17.) Leslie Joseph is the Human Resources Manager for TMGI and her responsibilities also include Millard Mall. (Id. at 7:7-12.) Joseph stated that it is her responsibility to be aware of wage and hour laws in California. (Id. at 53:5-9.)

Defendant argues that although it provided payroll support and guidance on human resources issues, it did not have the power to hire and fire Plaintiffs or any other Millard Mall employee.

In opposition, Plaintiffs present the testimony of Leslie Joseph, the Human Resources Manager, who responded to a question whether Project Managers, employed by Millard Mall, can hire and fire employees. Joseph stated that Project Managers "[c]an make a decision to hire. All terminations must be approved by human resources." (Dkt. No. 74-9, Jusuf Decl., Ex. 8, Joseph Depo. at 63:4-14.) As to pay raises, she stated that Project Managers may authorize pay raises "with the approval of the regional managers and HR." (Id. at 64:16-18.)

In Defendant's reply, Joseph provides a declaration explaining what she meant when she stated that Human Resources has to approve pay raises and terminations. (Dkt. No. 75-3, Joseph Decl.) She states that "approval" of pay raises was limited to making sure that administratively, the form was properly completed. She and other HR employees of TMGI did not have decision making authority over the amount of the raises for Millard Mall employees. (Dkt. No. 75-3, Joseph Decl. ¶ 2.) However, as to terminations, Defendant does not provide an explanation as to Joseph's testimony that all terminations had to be approved by HR. Defendant merely cites to prior declarations that Human Resources would only provide advice for termination decisions and the ultimate decision making authority always remained with Millard Mall Management. (Dkt. No. 70-3, Joseph Decl. ¶¶ 6-7; Dkt. No. 70-5, Carter Decl. ¶¶ 8-9.)

Defendant has provided conflicting statements as to whether TMGI had the authority to terminate Plaintiffs and the putative class members.[4] Declarations by Joseph and E. Lamar Carter,

---

[4]The Court also notes that according to the Employee Handbook, all requests for leave must be submitted with either your supervisor or directly to the HR dept. (Dkt. No. 74-4, Employee Handbook for Employees Covered by a Collective Bargaining Agreement § V at 15.) Further, although the

the Senior Vice President of Retail for Millard Mall, state that the ultimate decision to terminate remained with Millard Mall management while Joseph testified in a deposition that Project Managers can make a decision to hire an employee but "[a]ll terminations must be approved by human resources."  (Id. at 63:4-14.)  Defendant raises an issue as to whether TMGI had the authority to terminate Plaintiffs and the putative class members.  See Martinez, 49 Cal. 4th at 72.  Consequently, Defendant has pointed to specific facts in the record demonstrating that there is a genuine issue as to whether TMGI was an employer of Plaintiffs and the putative class members.  See Celotex, 477 U.S. at 324.  Accordingly, the Court DENIES Defendant TMGI's motion for summary judgment.

## Conclusion

Based on the above, the Court DENIES Defendant's motion for summary judgment.

DATED:  March 6, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge

---

handbook states that the Project Manager sets the working schedule for the employees, it also states, that "Millard Management has the right to change these work hours at any time."  (Id. § 4.)