1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10   GUADALUPE GONZALEZ, NORMA LOPEZ        Civil No.    09cv2076-AJB(WVG)
     JUAN, individually and on behalf of others
11   similarly situated,

12                              Plaintiff,    **ORDER DENYING DEFENDANT
                                              TMGI'S MOTION FOR SUMMARY
13              v.                            JUDGMENT**

14   MILLARD MALL SERVICES, INC., THE
     MILLARD GROUP, AND DOES 1
15   THROUGH 50,                             **[Doc. No. 70.]**

16                              Defendants.

17          Before the Court is Defendant The Millard Group, Inc.'s motion for summary judgment on

18   the ground that it was not the employer of Plaintiffs and the putative class members.  Plaintiffs filed

19   an opposition and Defendant filed a reply.  The motion is submitted on the papers without oral

20   argument, pursuant to Civil Local Rule 7.1(d)(1).  After a review of the briefs, supporting

21   documentation, and applicable law, the Court DENIES Defendant's motion for summary judgment.

22                              **Procedural Background**

23          This action was originally filed in the Superior Court of California for the County of San

24   Diego on April 1, 2009.  On September 22, 2009, the case was removed to this Court pursuant to the

25   Class Action Fairness Act.  (Dkt. No. 1.)  On February 11, 2010, Defendants filed a motion for

26   judgment on the pleadings.  (Dkt. No. 16.)  On April 7, 2010, the Court issued an order denying

27   motion for judgment on the pleadings and granted Plaintiffs' request to file a second amended

28   complaint.  (Dkt. No. 28.)  A second amended complaint ("SAC") was filed on April 12, 2010.

(Dkt. No. 31.)  On May 5, 2010, Defendants filed an answer.  (Dkt. No. 36.)  On October 29, 2010, Plaintiffs filed a motion to certify class action.  (Dkt. No. 48.)  On February 4, 2011, Defendant The Millard Group, Inc. filed the instant motion for summary judgment.  (Dkt. No. 70.)  Plaintiffs filed an opposition on February 18, 2011.  (Dkt. No. 74.)  On February 25, 2011, Defendant filed a reply.  (Dkt. No. 75.)  On March 14, 2011, the case was transferred to the undersigned judge.  (Dkt. No. 82.)  On February 29, 2012, the Court granted in part and denied in part Plaintiffs' motion to certify class action.  (Dkt. No. 89.)

**Factual Background**

Plaintiffs Guadalupe Gonzalez and Norma Lopez Juan brought a class action complaint against Defendants Millard Mall Services, Inc. ("Millard Mall") and The Millard Group, Inc. ("TMGI") (erroneously sued and served as "The Millard Group").  (Dkt. Nos. 31, 36.)  Defendants are in the business of providing janitorial services to shopping malls and other commercial facilities.  (Dkt. No. 74-9, Jusuf Decl, Ex. 8, Joseph Depo. at 13:11-22.)

Millard Mall employs janitors in 32 states, including California.  (Dkt. No. 70-2, Black Decl., Ex. 3, Kwiatowski Depo. at 24:9-23.)  Millard Mall is qualified to do business in California, performs janitorial work in California and has around 1,500 employees.  (Dkt. No. 70-3, Joseph Decl. ¶ 3.)  On the other hand, TMGI is an Illinois company which does business in four to five states in the mid-West and does not employ anyone in California.  (Id.)

According to Defendant, Millard Mall is a separate corporate entity from TMGI.  (Id. ¶ 4.)  Both are merely affiliates or "sister companies" which operate under common ownership along with a number of other companies.  (Id. ¶ 4.)  Millard Mall, TMGI and other companies are affiliates in a group of companies loosely referred to as "The Millard Group."  (Id.)  "The Millard Group" is not a formal legal entity but a named used to refer to a group of affiliated companies that are under common ownership."  (Id.)  Leslie Joseph, Human Resources Manager for TMGI, states that the employment documents state "The Millard Group"; however, that references the group of affiliated companies that operate under common ownership which include Millard Mall, TMGI, Boston Window Cleaning and others.  (Id. ¶ 9.)  The reference of "The Millard Group" in employment papers, such as the job application, was not to TMGI.  (Id.)  "The Millard Group" documents were

1   used so they could use one set of hiring documents as a convenience to the Human Resources

2   Department.  (Id.)

3                                           **Discussion**

4   **A.      Judicial Estoppel**

5          First, Plaintiffs argue that TMGI is judicially estopped from claiming that it was not an

6   employer of Plaintiffs and the putative class members after admitting that it was in its Notice of

7   Removal.  Defendant argues that TMGI is not estopped from showing that it was not Plaintiffs'

8   employer.

9          Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an

10  argument and then relying on a contradictory argument to prevail in another phase."  New

11  Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Pegram v. Herdrich, 530 U.S. 211, 227, n. 8

12  (2000)).  It is an "equitable doctrine invoked by a court at its discretion."  Id. at 750.  It is "intended

13  to protect the integrity of the judicial process by preventing a litigant from playing fast and loose

14  with the courts."  Whaley v. Belleque, 520 F.3d 997, 1002 (9th Cir. 2008).

15         "In determining whether to apply the doctrine, we typically consider (1) whether a party's

16  later position is 'clearly inconsistent' with its original position; (2) whether the party has

17  successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent

18  position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the

19  opposing party.'"  United States v. Ibrahim, 522 F.3d 1003, 1009 (9th Cir. 2008) (quotation omitted).

20         The parties dispute the interpretation of Human Resources Manager Leslie Joseph's

21  declaration.  The declaration filed in support of Defendants' removal states,

22         [a]s a Human Resources Manager, my responsibilities include employee relations,
           labor and union relations, creation and implementation of company policies and
23         procedures.  In my capacity as Human Resources Manager, I have personal
           knowledge regarding the Millard Group, Inc.'[s] employees' positions, hours of
24         work, payroll, wages, hiring, discipline and termination.  Additionally, as Human
           Resources Manager, I have access to and am familiar with the Company's
25         WinTeam HR Information Systems, which contains payroll and wage information
           for all Millard employees.
26
27  (Dkt. No. 74-2, Jusuf Decl., Ex. 1, Joseph Decl. ¶ 2.)

28         Plaintiffs argue that these statements are an admission that TMGI was the employer of

    Plaintiffs and the putative class members.  Defendant contends that this is not an admission as to

1    which entity employed Plaintiffs and the putative class members.  It argues that the statements only

2    assert that Joseph is employed by TMGI, has access to a computer system with information about

3    "all Millard employees," and provides some information about the class members without making

4    any representations as to which Millard entity employs those persons.

5            The Court agrees with Defendant's interpretation.  Joseph's declaration only states that as the

6    Human Resources Manager, she has access to personnel information about TMGI employees.  Her

7    declaration is not an admission that TMGI employs Plaintiffs and the putative class members.

8            Second, Plaintiffs argue that TMGI should be judicially estopped because TMGI has not

9    claimed it did not employ Plaintiffs or the putative class members prior to this motion.  Defendant

10   asserts that from the beginning of the action, TMGI has expressly and repeatedly informed

11   Plaintiffs' counsel that it was not the employer of Plaintiffs and the putative class members.

12           The Answer to the First Amended Complaint and the Second Amended Complaint contain

13   denials that TMGI was Plaintiffs' employer.  (Dkt. No. 75-2, Black Decl., Exs. 1, 2.)  In February

14   2010, Defendants' counsel called Plaintiffs' counsel in order to meet and confer regarding a

15   resolution where TMGI would be dismissed without prejudice on the grounds that it was not

16   Plaintiffs' or the putative class members' employer.  (Dkt. No. 75-2, Black Decl. ¶ 4.)  Defense

17   counsel followed up with an e-mail communication.  (Dkt. No. 75-2; Black Decl., Ex. 3.)  In

18   discovery responses, Defendants objected to the definition of "Millard" to include any entity other

19   than Millard Mall Services, Inc.  (Dkt. No. 75-2, Black Decl., Ex. 4 at 40.)  Defendants provided

20   Plaintiffs with corporate documents showing the TMGI and Millard Mall are two separate legal

21   entities.  (Dkt. No. 75-2, Black Decl., Ex. 7.)

22           Contrary to Plaintiffs' conclusory and factually unsupported position that TMGI has not

23   claimed it did not employ Plaintiffs until now, the evidence provided by Defendant shows that

24   throughout the litigation the issue of whether TMGI was an employer of Plaintiffs and the putative

25   class members has been at issue.  The Court concludes that judicial estoppel does not apply as

26   Defendant has not provided inconsistent positions during the litigation.

27   **B.    Legal Standard for Motion for Summary Judgment**

28           Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on

factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material when it affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  Celotex Corp., 477 U.S. at 323.  The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial.  Id. at 322-23.  If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.  If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law.  Id. at 325.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact.  Anderson, 477 U.S. at 255.

## C.    Employer under California Law

Defendant TMGI moves for summary judgment that it was not Plaintiffs' and the class

members' employer.  Plaintiffs oppose.

The parties rely on the recent opinion from the California Supreme Court in Martinez v. Combs, 49 Cal. 4th 35 (2010) to support their positions.  In Martinez, the court held that the California's Industrial Welfare Commission ("IWC")[1] governs the definition of an employer.  Id. at 64.  The IWC has the authority to promulgate regulations known as "wage orders" governing wages, hours, and working conditions in the State of California.  Tidewater Marine Western, Inc. v. Bradshaw, 14 Cal.4th 557, 561 (1996).  Currently, there are 16 effective wage orders, most of which cover specific industries.  Martinez, 49 Cal.4th at 50.

Under the IWC[2], "employer" means "any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person."  (Dkt. No. 74-7, Jusuf Decl., Ex. 6, Wage Order 4-2001, § 2(H).)  Under the IWC's definition, "employ" means to "(a) to exercise control over the wages, hours or working condition, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship."  Martinez, 49 Cal.4th at 64.

In Martinez, plaintiffs were seasonal strawberry pickers working for Munoz & Sons ("Munoz") who sued for unpaid minimum wages against merchants that purchased strawberries from Munoz.  Id. at 42.  The merchants moved for summary judgment claiming that they could not be held liable for the alleged wage and hour violations because they were not "employers" of the plaintiffs.  Id. at 48.  The California Supreme Court held that the produce merchants did not exercise control over the workers' wages and hours and were not liable as "employers" under the IWC's wage order.  Id. at 71-74.

In determining whether Defendant Apio, a produce merchant, exercised control over wages, hours or working conditions, the Court explained that Munoz, the strawberry farmer, and not the produce merchant, hired and fired plaintiffs, trained and supervised them, determined their rate and

---

[1] The IWC "is an administrative body within the Division of Labor Standards Enforcement, consisting of five members appointed by the Governor.  The commission determines the wages, hours, and working conditions of all employees, except outside salesmen, in 15 industries."  Cal. Hotel & Motel Ass'n v. Indus. Welfare Com., 25 Cal.3d 200, 205 (1979).

[2] The parties do not dispute the applicability of Wage Order 4-2001.

[09cv2076-AJB(WVG)]

1   manner of pay and set their hours.  Id. at 72.  Therefore, the facts did not establish that "Apio's

2   business relationship with Munoz allowed the company to exercise control over Munoz's

3   employees' wages and hours."  Id.

4          In Futrell v. Payday California, 190 Cal. App. 4th 1419 (2010), the California Court of

5   Appeal held that a payroll processing company, that contracted with a company that produced

6   television commercials, was not an employer under the Labor Code.  The court explained that

7   preparation of payroll is largely a ministerial task, that there was no evidence that Payday had the

8   power to cause Plaintiff to work or prevent him from working and Payday did not have any control

9   over Plaintiff's work activities.  Id. at 1432-35.  In Futrell, evidence showed that Payday issued

10  paychecks drawn on its own bank account, and timecards, employee information sheets,

11  employment eligibility verification, and W-4 employee withholding certificates were provided by

12  Payday.  Id. at 1427.  The pay stubs identified Payday as the "employer of record" and W-2 forms

13  identified Payday as Futrell's "employer."  Id.  Payday was considered an employer by the IRS for

14  purposes of income tax and unemployment insurance.  Id.  Payday also paid premiums for workers'

15  compensation insurance and unemployment insurance.  Id.  The court of appeal concluded that these

16  facts did not support the conclusion that Payday exercised control over Plaintiff's wages.  Id. at

17  1432-33.

18         In this case, the parties dispute whether TMGI exercised control over the wages, hours or

19  working conditions of Plaintiffs and the putative class members.

20         **1.      Exercise Control Over Wages, Hours or Working Conditions**

21         Defendant argues that Plaintiffs cannot establish that TMGI controlled their wages, hours or

22  working conditions.  Plaintiffs oppose arguing TMGI directly and/or indirectly controlled the wages,

23  hours and working conditions of Plaintiffs and the putative class members.

24         The parties do not dispute that TMGI's human resources department provided payroll

25  services and human resources support to Millard Mall.  (Dkt. No. 70-5, Carter Decl. ¶ 8; Opp. at

26  11[3].)  Paychecks for the Millard Group and TMGI are processed in Lincolnwood, Illinois.  (Dkt. No.

27  74-9, Jusuf Decl., Ex. 8, Joseph Depo. at 55:1-56:21.)  The payroll manager handles payroll for both

28  _____

               [3]Page numbers are based on the CM/ECF pagination.

1  TMGI and the Millard Group.  (Id. at 56:22-57:16.)  In addition, Defendant maintains its corporate

2  office in Lincolnwood, Illinois where the company's employment policies and procedures emanate.

3  (See Dkt. No. 74-9, Jusuf Decl., Ex. 8, Joseph Depo. at 8:10-14; 53:5-9; 60:11-62:17.)  Leslie

4  Joseph is the Human Resources Manager for TMGI and her responsibilities also include Millard

5  Mall.  (Id. at 7:7-12.)  Joseph stated that it is her responsibility to be aware of wage and hour laws in

6  California.  (Id. at 53:5-9.)

7       Defendant argues that although it provided payroll support and guidance on human resources

8  issues, it did not have the power to hire and fire Plaintiffs or any other Millard Mall employee.

9       In opposition, Plaintiffs present the testimony of Leslie Joseph, the Human Resources

10 Manager, who responded to a question whether Project Managers, employed by Millard Mall, can

11 hire and fire employees.  Joseph stated that Project Managers "[c]an make a decision to hire.  All

12 terminations must be approved by human resources."  (Dkt. No. 74-9, Jusuf Decl., Ex. 8, Joseph

13 Depo. at 63:4-14.)  As to pay raises, she stated that Project Managers may authorize pay raises "with

14 the approval of the regional managers and HR."  (Id. at 64:16-18.)

15      In Defendant's reply, Joseph provides a declaration explaining what she meant when she

16 stated that Human Resources has to approve pay raises and terminations.  (Dkt. No. 75-3, Joseph

17 Decl.)  She states that "approval" of pay raises was limited to making sure that administratively, the

18 form was properly completed.  She and other HR employees of TMGI did not have decision making

19 authority over the amount of the raises for Millard Mall employees.  (Dkt. No. 75-3, Joseph Decl. ¶

20 2.)  However, as to terminations, Defendant does not provide an explanation as to Joseph's

21 testimony that all terminations had to be approved by HR.  Defendant merely cites to prior

22 declarations that Human Resources would only provide advice for termination decisions and the

23 ultimate decision making authority always remained with Millard Mall Management.  (Dkt. No. 70-

24 3, Joseph Decl. ¶¶ 6-7; Dkt. No. 70-5, Carter Decl. ¶¶ 8-9.)

25      Defendant has provided conflicting statements as to whether TMGI had the authority to

26 terminate Plaintiffs and the putative class members.[4]  Declarations by Joseph and E. Lamar Carter,

27 _____

28      [4]The Court also notes that according to the Employee Handbook, all requests for leave must be submitted with either your supervisor or directly to the HR dept. (Dkt. No. 74-4, Employee Handbook for Employees Covered by a Collective Bargaining Agreement § V at 15.)  Further, although the

the Senior Vice President of Retail for Millard Mall, state that the ultimate decision to terminate remained with Millard Mall management while Joseph testified in a deposition that Project Managers can make a decision to hire an employee but "[a]ll terminations must be approved by human resources."  (Id. at 63:4-14.)  Defendant raises an issue as to whether TMGI had the authority to terminate Plaintiffs and the putative class members.  See Martinez, 49 Cal. 4th at 72. Consequently, Defendant has pointed to specific facts in the record demonstrating that there is a genuine issue as to whether TMGI was an employer of Plaintiffs and the putative class members. See Celotex, 477 U.S. at 324.  Accordingly, the Court DENIES Defendant TMGI's motion for summary judgment.

**Conclusion**

Based on the above, the Court DENIES Defendant's motion for summary judgment.

DATED:  March 6, 2012

_____

Hon. Anthony J. Battaglia
U.S. District Judge

---

handbook states that the Project Manager sets the working schedule for the employees, it also states, that "Millard Management has the right to change these work hours at any time." (Id. § 4.)